PIETRO ADAMO *vs.* GIUSEPPINA ADAMO.

JULY 27, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is a petition for writ of *certiorari* to quash an interlocutory order of the superior court granting an allowance for support, counsel fees and witness fees in a divorce case.   The writ was issued and the record complained of has been certified to this court.

From the record the following facts appear.   The petitioner, Pietro Adamo, a resident of the city of Providence and a citizen of the United States, on May 28, 1936, filed a petition for divorce from his wife, Giuseppina Adamo, of Librizzi in Sicily, Italy, on the grounds of desertion and living separate and apart for ten years.   The citation in the divorce case, which was returnable to the superior court for

the county of Providence on the first Monday in September 1936, was duly served upon the respondent by a disinterested person, through the United States consulate at Palermo, Sicily.

On September 12, 1936, a motion was filed in behalf of the respondent by her attorney, praying for an allowance for support of herself and minor child, Carmelo Adamo, aged fourteen years, and a further sum for counsel fees and witness fees, "including a sufficient sum for traveling expenses for herself and said minor child from Librizzi, Messina, Italy, to Providence, Rhode Island, in order to appear before this Honorable Court in defense of this action, she being without funds." This motion was heard by a justice of the superior court sitting as a justice of the court of domestic relations, which division of the superior court was recently created by public laws, May Session, 1935, chapter 2254.

At this hearing, counsel for the respondent was permitted to put in evidence, over the repeated objections of the petitioner, statements by the brother and sister of the respondent, who had resided in the United States for thirty-three and sixteen years, respectively, to the effect that the respondent had on different occasions informed them by letter that she was without means, and that they, knowing from conversations with the petitioner that he was not sending his wife any money, did send her money from time to time *for her support*. The petitioner, admitting that he had not sent any money to his wife in recent years, testified that between 1922, when he came to America, and 1926, he had sent her some $4000 so that she and the boy might join him in this country but that, instead of doing as he requested, she had bought property with that money in her individual name in Librizzi, Italy, which she still-owned.

Upon this evidence, the trial justice ordered the petitioner to pay $1.00 a week each to the respondent and to the child, $50 counsel fees and $200 witness fees. As to this last item, he said: "The Court does not feel that it can order the payment of transportation of the respondent, but the Court has

jurisdiction to allow witness fees and witness fees might include transportation of the respondent."

The hearsay testimony for the respondent by her brother and sister was admitted by the court on the theory that sitting as a justice of the court of domestic relations he had "a right to investigate all matters concerning a divorce petition" and "may investigate and take in hearsay evidence." The court was in error in so ruling. Public laws 1935, chap. 2254, sec. 3, which creates the court of domestic relations, authorizes the justice assigned to that division of the superior court to exercise powers of widely divergent nature.

The different paragraphs of sec. 3 are not specifically numbered in that section. Taking them in sequence, however, they provide as follows. Paragraph 1, "The presiding justice of the superior court shall from time to time designate one or more of the justices of said court to *hear and determine* all petitions for divorce from the bond of marriage and from bed and board, all motions for allowance, alimony, support and custody of children and other matters affecting the parties and their children wherein jurisdiction is acquired by the court by the filing of such petitions for divorce." (italics ours) Paragraph 2 states that: "Said court when hearing such causes and the matters hereinafter set forth may be referred to as the court of domestic relations." Paragraph 3 refers for "hearing, adjustment, reconciliation, decision and sentence all causes properly brought in said court or appealed from other courts" in which the defendant is accused of abandonment, neglect to provide, drunkenness, assault, and various other offenses, among husband, wife or child, which tend to destroy the family relations. Paragraph 4 says: "In all the above causes said court, sitting as a court of domestic relations, shall seek to reconcile the parties and to re-establish friendly family relations, and to this end may suggest and hold conferences in chambers with the parties interested and their counsel, if they are represented by counsel, and may have the children of the parties brought before it for examination." Paragraph 5 imposes certain duties

upon probation officers in connection with matters referred to them by the court for investigation or enforcement. Paragraph 6, the concluding paragraph of sec. 3, reads: "The court is authorized to seek the co-operation of all societies or organizations, public or private, to the end that the court may be assisted in every reasonable way to prevent the separation of the family and/or to effect a reconciliation between its members."

The legislative intent is clear upon a careful reading of sec. 3. While in paragraph 4 it directs a justice of the court of domestic relations to "seek to reconcile the parties and to re-establish family relations" whenever and by any reasonable method that this much desired object can be attained, it nowhere alters, modifies, or in any way affects the rights of the parties, falling within the scope of its provisions, to insist upon a determination of those rights upon a hearing according to law.

Section 3 is not ambiguous when its provisions are read with care. Its purposes are two-fold: judicial and advisory. At various stages in the same proceedings a justice of the court of domestic relations may be called upon to act either as a judge or as an advisor. In the former instance it is his duty to hear and determine questions of disputed rights. When acting in this capacity, he is bound to determine such rights from evidence that is legally competent under well known rules of law. In the latter instance, he is required to use his best efforts, as a duly authorized representative of the state, to effect a reconciliation and re-establish friendly family relations whenever possible, to the advantage of the individuals and of society in general. His position as a judge gives him the right to attempt the accomplishment of this highly desirable purpose, but in so doing he is not exercising the judicial power of the state vested in him for the determination of disputed rights. Under these circumstances, he is in the position of a disinterested advisor or conciliator. It is for this reason that he is allowed wide discretion in receiving whatever information he may desire

to assist him in his delicate mission, whether such information is legal evidence or not.

In proceedings under sec. 3, therefore, the capacity in which the court is acting fixes the character of the testimony allowable at any particular time. Disputed rights can be determined only from competent legal evidence, while an attempt "to reconcile and re-establish friendly family relations" may be based on information that might not satisfy the strict rules of evidence. It is clear to us that in enacting sec. 3, the legislature did not intend that the legal rights of litigants should be determined upon hearsay evidence.

In the instant case the respondent, in moving for an allowance, counsel fees, and cost of transportation, is demanding rights; she is not asking for favors, and her rights must therefore be determined according to law. Under general laws 1923, chapter 291, sec. 14, the orders that the trial justice made, if allowed to stand, may subject the husband to punishment for noncompliance therewith by suit, execution or contempt proceedings. A determination of rights that may bring such consequences to one of the parties must be based upon competent evidence. Finding no such evidence in the record before us, we cannot sustain the order of the justice of the domestic relations court in the case at bar.

The above-cited statute requires a husband to furnish his wife, who has no property of her own available, advantages similar to his own in presenting her case in court. She is entitled to be heard in her own behalf either in person or in some other manner provided by law. We are not called upon in this case to decide whether under the statute the husband can be ordered to pay the cost of transportation for his wife. But if this can be done, as the court practically did in this case, before making such an order, the court should consider all the surrounding circumstances and determine whether, even if the order were complied with, the object of the order would be accomplished. Assuming that the husband in the instant case paid the $200 as ordered by the court, there is no assurance that the respon-

dent would then come to Rhode Island; or that she would be permitted, under the immigration laws, to enter this country, because of physical condition, or other reasons.

The citation in this case shows that the respondent lives within the jurisdiction of the United States consul at Messina, Italy, and that the citation was served upon her by a disinterested person, who acknowledged making such service before that official. If this was done in this instance, we fail to see why competent testimony from the wife cannot be secured in a similar manner by way of deposition, as provided by statute.

In any rehearing of this matter, if the testimony shows that the wife is without means, the trial justice may, in his discretion, order the husband to pay an estimated and reasonable sum for the purpose of taking her deposition, so that her contentions may be presented to the court at a hearing on the merits of this petition.

The decree of the superior court entered on the 25th day of September, A. D., 1936, is quashed and the restraining order entered by this court is vacated.

The papers of the superior court are ordered returned to that court.

*Uldrich Pettine,* for petitioner.
*Lucien Capone,* for respondent.